UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL   'O'

| Case No. | CV 10-7060-CAS (JCGx) | Date | January 17, 2013 |
|---|---|---|---|
| Title | DANIEL ORDONEZ V. RADIO SHACK, INC. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants |
|---|---|
| Not Present | Not Present |

**Proceedings:**       **(IN CHAMBERS): PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** (filed July 23, 2012)

## I.    INTRODUCTION

On May 26, 2010, plaintiff Daniel Ordonez filed the instant suit in the Los Angeles County Superior Court against defendant RadioShack, Inc.  Plaintiff, on behalf of himself and all other similarly situated current and former non-exempt employees of defendant, seeks to recover wages and penalties resulting from various violations of the California Labor Code and California Business and Professions Code.  Defendant removed this action to federal court on September 22, 2010.  Dkt. No. 1.

The operative Second Amended Complaint ("SAC") alleges the following claims: (1) failure to provide required meal periods in violation of Cal. Labor Code § 226.7 and IWC Order 4-2001(11); (2) failure to provide required rest periods in violation of Cal. Labor Code § 226.7 and IWC Order 4-2001(12); (3) failure to pay overtime compensation in violation of Cal. Labor Code §§ 226, 510, 1194, 1197 and IWC Order 4; (4) failure to pay minimum wages in violation of Cal. Labor Code §§ 226, 510, 1194, 1197 and IWC Order 4; (5) failure to maintain required records in violation of Cal. Labor Code § 1174, 1174.5 and IWC Order 4-2001(7); (6) failure to pay all wages due to discharged or quitting employees in violation of Cal. Labor Code §§ 201, 202, 203; (7) unlawful collection or receipt of wages previously paid and failure to indemnify for expenditures in discharge of duties, pursuant to Cal. Labor Code §§ 221 and 2802 and Wage Order 7-2001; (8) unfair business practices pursuant to Cal. Bus. & Prof. Code §§ 17200 et seq.; and (9) representative action for civil penalties pursuant to Cal. Lab. Code §§ 2698-2699.5.

On July 23, 2012, plaintiff filed the instant motion for class certification, Dkt. No. 61, defendant opposed the motion on October 1, 2012, and plaintiff replied on October

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL                'O'

| Case No. | CV 10-7060-CAS (JCGx) | Date | January 17, 2013 |
|----------|------------------------|------|-------------------|
| Title | DANIEL ORDONEZ V. RADIO SHACK, INC. | | |

31, 2012. The parties also filed various objections to the respective submissions made in support or opposition of plaintiff's motion. The Court held a hearing on November 19, 2012. After considering the parties arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

RadioShack is in the business of selling a broad assortment of consumer electronics and wireless device products nationwide through its retail stores. See Decl. of Wendy Sha Ex. 1 (Annual Report, Form 10-K). Plaintiff alleges that RadioShack has a centralized, hierarchal management structure that oversees its labor force. Key to RadioShack's sales model are the hourly sales associates and "stock positions" at RadioShack's retail stores, who interact with customers, promote the items in the store, and engage in various other tasks to keep RadioShack's retail operation running smoothly. Sha Decl. Ex. 2, Depo. of Shad Agel. Assistant managers have the same duties as sales associates, but they are also responsible for opening and closing stores as well as filling in when a Store Manager is absent. A store manager, in turn, supervises the assistant managers, sales associates and stock positions at a given store. Further up the employment hierarchy are District Managers, who oversee the operation of multiple RadioShack stores within a given district. District Managers are responsible for reviewing the labor costs of stores within their district to ensure the stores "were staying within [RadioShack's] scheduling guidelines and payroll budget." Id. 29:2–10; see also 262:18–23, 263:20–264:7. A regional sales director supervises the district managers and their respective store locations.

In its zeal to minimize labor costs, plaintiff alleges that RadioShack has adopted uniform policies and procedures that deprive sales associates of the required meal and rest breaks, as well as fails to compensate them for off-the-clock work. See, e.g., Sha Decl. Exs. 6, 7. With respect to meal breaks in all stores, store and district managers are responsible for ensuring that sales associates receive uninterrupted thirty-minute meal breaks. See Sha Decl. Ex. 4, Juarez Depo. 53:13–22; Ex. 2, Agel Depo. 283:8–17. To ensure that meal breaks occur, an electronic work schedule is maintained that schedules each employee's meal break at the appropriate time.[1] However, according to current and

---

[1] Timekeeping was performed via a uniform electronic system called "Workbrain" for most of the class period. All meal breaks were required to be recorded in this system

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | CV 10-7060-CAS (JCGx) | Date | January 17, 2013 |
|---|---|---|---|
| Title | DANIEL ORDONEZ V. RADIO SHACK, INC. | | |

former sales associates who testified on plaintiff's behalf, sales associates always had to ask permission from a manager or supervisor before taking a meal or rest break; otherwise, a store might be left understaffed.  See, e.g., Pl.'s Compendium of Class Member Declarations ("Pl.'s Compend.") Ex. 1 ¶ 6; Ex. 2 ¶ 7; Ex. 3, ¶ 6.  The electronic schedule in fact only provided a "guideline" of when a sales associate should take their meal break.  And under no circumstances could an hourly employee waive their meal break by agreement with RadioShack.  As to rest breaks, plaintiff notes that RadioShack has maintained a rest break policy since 2006 that provides "one paid 15-minute break for every four hours worked."  Sha Decl. Ex. 6.  According to plaintiff's declarants, sales associates also must ask permission before taking a rest break.[2]

Because of these allegedly uniform policies, plaintiff contends that employees often are not provided with their statutorily mandated meal and rest breaks, nor are they properly compensated for these missed or interrupted breaks.  In support of this contention, plaintiff offers the following evidence.  First, RadioShack has no policies in place higher up in the corporate hierarchy to ensure that meal and rest breaks are being provided, nor do district managers ensure that meal and rest breaks are being provided as part of their duties.  See Agel Depo. 259:25–260:18; 258:1–259:2.  Second, plaintiff's nine declarants testify to the fact that sales associates are frequently denied rest or meal breaks or interrupted during their breaks for reasons of business exigency.  See generally Pl.'s Compend.

Third, plaintiff has retained Dr. Dwight D. Steward, Ph. D., an economist and statistician with experience in labor and employment matters, to analyze RadioShack's

---

according to company policy.  See Sha Decl. Ex. 3, Wiggs Depo. 19:19–20, 28:12–24, 29:19–30:6.  Managers are responsible for reviewing timekeeping records to ensure that all hours and meal breaks are accurately recorded.  Agel Depo. 62:3–11.

[2] RadioShack agrees that it maintains uniform written policies that provide employees with the required 30 minute meal periods and 15 minute rest periods; RadioShack disputes that such policies are ever violated.  See Opp'n at 4–5.  RadioShack notes that all employees sign an acknowledgment form attesting to their having read RadioShack's Team Answer Book Policies, which sets forth RadioShack's break policies.  Id. at 4; see Sha Decl. Ex. 8 (Answer Book) and see, e.g., Def.'s Compendium of Exhibits ("COE") Exs. 3, 5 (acknowledgment forms).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | CV 10-7060-CAS (JCGx) | Date | January 17, 2013 |
|---|---|---|---|
| Title | DANIEL ORDONEZ V. RADIO SHACK, INC. | | |

time and pay records.  Stewart Decl. ¶¶ 1, 2.  Dr. Stewart randomly sampled time punch data for 2,617 non-exempt employees at 60 stores, covering 407,865 worked shifts over a five-year time period.  Id. ¶ 8.  He found that 49.52% of all sales associates had a missed, short, or late meal period in more than 50% of the shifts that they worked greater than five hours; 84.4% of sales associates experienced at least one meal period violation in 25% or more of the shifts that they worked.  In addition, 25% of all analyzed shifts greater than five hours in length evidenced a missed meal period; 12.28% of all analyzed shifts greater than five hours in length had a shortened meal period.  With respect to five to six hour shifts, missed meal periods occurred in 44.43% of analyzed shifts, and 52.41% of shifts of this length had a missed, short, or late meal period.  Dr. Stewart provides further analysis for shifts between six to ten hours and ten to fifteen hours.

In addition to these alleged violations, plaintiff contends that sales associates have not been properly compensated according to California law for any missed rest breaks or meal periods.  Plaintiff notes that Dr. Stewart was unable to find any evidence of "premium pay" when he analyzed RadioShack's payroll data, see Stewart Decl. ¶¶ 24–26, although RadioShack's witness testified that a manager added an extra hour in the time record of a shift that had a missed meal period, Agel Depo. 194:10–195:3.  A specific premium payment functionality was not added to the electronic timekeeping system until February 2011; before this time, RadioShack had no way of identifying where a meal period was not taken during a shift, other than through the careful oversight of a store manager.  Wiggs Depo. 71:13–20, 72:11–19.  Declarations from putative class members also indicate that they were not compensated for all missed, short, or late meal breaks.  See generally Pl.'s Compend.[3]

Finally, because of RadioShack's relentless focus on controlling overtime costs, plaintiff claims that store managers are forced into pressuring sales associates to work

---

[3] Plaintiff additionally claims that  RadioShack admits that it does not pay rest break premiums, according to plaintiff, but plaintiff's claim is based off the testimony of RadioShack's person most knowledgeable ("PMK") for the electronic time system, not for payroll or human resource matters more generally.  See Wiggs Depo. 73:2–9.  This witness testified to there being no functionality for premium pay for rest breaks, although such pay could be manually added.  Id.  The witness did not testify that RadioShack does not provide premium pay.  See id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** 'O'

| Case No. | CV 10-7060-CAS (JCGx) | Date | January 17, 2013 |
|---|---|---|---|
| Title | DANIEL ORDONEZ V. RADIO SHACK, INC. | | |

off-the-clock. <u>See</u> Sha Decl. Ex. 7. In particular, class members testified that were instructed by their managers to work off-the-clock at various times, such as when making bank deposits or picking up and dropping off sales merchandise at other RadioShack stores. <u>See, e.g.</u>, Pl.'s Compend. Ex.1 ¶¶ 16–18; Ex. 2 ¶¶ 19–25; Ex. 7 ¶¶ 27–35.[4] Plaintiff also notes that Dr. Steward found that overtime hours accounted for only four percent of the total hours worked by sales associates in his sample. This evidence, in combination with RadioShack's creation of "unrealistic" work schedules to avoid overtime hours but that in fact result in understaffing problems, leads to sales associates having to work off-the-clock and without proper overtime pay.

Rather than a "uniform policy" requiring sales associates to obtain permission before taking one of their statutorily prescribed breaks, RadioShack avers that employees need only notify their supervisor they are taking a break, not ask for permission. <u>See</u> Agel Depo. 207:17 ("They don't need to obtain permission. They need to let whoever else is working know that they are going to take their meal break."); <u>see, e.g.</u>, Def.'s Compendium of Declarations ("COD") Exs. 1 ¶¶ 12, 17; 2 ¶¶ 12, 20. Moreover, RadioShack contends that its written policy of providing meal and rest breaks was consistently followed at all of its California stores. Employees understood their right to such breaks, and store managers enforced RadioShack's policy so that breaks were actually made available at the proper times. <u>See generally</u> Def.'s COD. In addition, if a

---

[4] The parties raise numerous objections to the declarations submitted by the opposing side on the grounds of relevance, lack of personal knowledge, improper lay opinion, and hearsay not within an exception. <u>See</u> Fed. R. Evid. 402, 403, 602, 701, 802. The Court OVERRULES these objections, because "evidence presented at the class certification stage need not be admissible at trial." <u>Alonzo v. Maximus</u>, 275 F.R.D. 513, 519 (C.D. Cal. 2011). The parties' objections go to the weight of the testimony, because admissibility is not at issue on this motion. To the extent that the Court finds that putative class members or RadioShack managers offer irrelevant or speculative testimony, the Court declines to rely on these statements. In addition, plaintiff objects to the declaration of RadioShack's expert, Stefan Boedeker. Again, the Court OVERRULES this objection without prejudice. To the extent that Boedeker's conclusions are impermissible legal ones or not supported by sound statistical science, as plaintiff and his expert contend, this argument goes to the weight accorded to Boedeker's testimony. In any event, Boedeker does not challenge many of Dr. Steward's empirical findings, which play a leading role in plaintiff's theory of classwide liability.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | CV 10-7060-CAS (JCGx) | Date | January 17, 2013 |
|---|---|---|---|
| Title | DANIEL ORDONEZ V. RADIO SHACK, INC. | | |

break was in fact not provided, RadioShack contends that an additional hour of compensation was always paid, even before such functionality was added to the electronic timekeeping system.  See Sha Decl. Ex. 9, Bullard Decl. ¶ 5.

RadioShack also notes that its written policy unequivocally requires meal and rest breaks and prohibits off-the-clock work.  Its Attendance/Scheduling Policy states:

> Adherence to company policies concerning attendance and scheduling is also expected and will help control payroll by ensuring that the store is properly staffed throughout the week.  This requires that all employees work their scheduled shifts, properly clock in and out and report all hours worked.

> The following is a summary of the company policies relating to scheduling and attendance.  All store managers and associates in the California area are required to adhere to the following:
> * * *
> **Clocking in/out**—All employees are required to timely clock in and out (at the beginning and end) of each shift and when leaving for and returning from a meal break.
> **Meal and Rest Breaks**—All employees are required to take one paid 15 minute rest break for every four hours worked in a given shift.  Additionally, all employees are required to take an unpaid meal break of at least 30 minutes for every 5 hours worked in a shift.

Sha Decl. Ex. 7.  Immediately following the above-quoted language, the Attendance/Scheduling Policy provides:

> **NO EMPLOYEE IS PERMITTED TO WORK WITHOUT PROPERLY CLOCKING IN AND OUT IN ACCORDANCE WITH THE POLICIES ABOVE.  WORKING "OFF-THE-CLOCK" IS STRICTLY PROHIBITED.**

> **There are no exceptions to these policies.  Any employee who violates these policies and any store manager or district manager who permits an employee to violate these policies will be subject to disciplinary action, up to and including termination.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      'O'

| Case No. | CV 10-7060-CAS (JCGx) | Date | January 17, 2013 |
|---|---|---|---|
| Title | DANIEL ORDONEZ V. RADIO SHACK, INC. | | |

If you have any questions about this policy, or wish to report a violation, please contact the Employee Relations Hotline @ 877-723-4699.

Id. (emphasis in original).  Plaintiff electronically signed a written acknowledgment form attesting to his receipt of the Attendance / Scheduling policy on July 14, 2009, and acknowledged receipt of the Team Answer Book on October 31st, 2006 as well as July 14, 2009.  See Def.'s COE Exs. 1–3.  Elsewhere, defendant's policy regarding "Break and Meal Periods" states, in addition to the foregoing, that "[s]tate laws specifying additional break and meal provisions may also apply to this policy."  Sha Decl. Ex. 6.  In addition, at least since September 2008, every employee who logs in to view their electronic time records approves a message stating in relevant part:

> I acknowledge that the hours reported are accurate and reflect all of the hours I worked. . . I further acknowledge that I have been afforded the opportunity to take all of my meal and rest periods in accordance with company policy.  If a meal period is not reflected it is because I chose not to take it.

Decl. of Bill Giudice ¶ 13.[5]

Plaintiff seeks to represent a class of all hourly employees, including all "current and former non-exempt employees of RadioShack, who held the positions of sales associates and stock position for a period of time since May 26, 2006."  Mot. at 2.  Alternatively, plaintiff seeks to represent the following subclasses: (1) a meal break subclass; (2) a rest break subclass; and (3) an "off-the-clock" subclass.[6]

---

[5] Prior to September 2008, store employees were required to review a paper report of their time records; from February 2011 to the present, the approval message varied slightly (but not materially) from that set forth in relevant part above.  Giudice Decl. ¶¶ 10–14.

[6] Plaintiff notes that his remaining claims relating to overtime compensation, minimum wage violations, waiting time penalties, record-keeping obligations, and unfair business practices are all based on his meal period, rest break, and off-the-clock claims.  Therefore, plaintiff avers that any class certified with respect to any of the latter can encompass the former claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'

| Case No. | CV 10-7060-CAS (JCGx) | Date | January 17, 2013 |
|---|---|---|---|
| Title | DANIEL ORDONEZ V. RADIO SHACK, INC. | | |

## III.  LEGAL STANDARD

"Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits, and (2) to protect rights of persons who might not be able to present claims on an individual basis." Haley v. Medtronic, Inc., 169 F.R.D. 643, 647 (C.D. Cal. 1996) (citing Crown, Cork & Seal Co. v. Parker, 462 U.S. 345 (1983)). Federal Rule of Civil Procedure 23 governs class actions.  For a suit to be maintained as a class action, the proposed class must "satisfy the criteria set forth in subdivision (a). . . , and it also must fit into one of three categories described in subdivision (b)." Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., — U.S. —, 130 S.Ct. 1431, 1437 (2010).  More than a pleading standard, Rule 23 requires the party seeking class certification to "affirmatively demonstrate . . . compliance with the rule." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. ---, ---, 131 S.Ct. 2541, 2551 (2011).  This requires a district court to conduct "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." Id.

First, plaintiffs must demonstrate that the four requirements of Rule 23(a) are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. These requirements effectively "limit the class claims to those fairly encompassed by the named plaintiff's claims." Falcon, 457 U.S. at 155 (quoting Califano v. Yamasaki, 442, U.S. 682, 701 (1979)).

Second, if a court finds that the Rule 23(a) requirements are met, the court must consider whether the class is maintainable under one of the three alternatives set forth in Rule 23(b). Wal-Mart Stores, Inc. v. Dukes, 564 U.S. ---, ---, 131 S.Ct. 2541, 2548 (2011).  Plaintiffs here seek certification under Rule 23(b)(3), which requires "that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  "The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998) (citing Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997)).  If "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," then adjudication on a representative basis is appropriate. Id.  Otherwise, individualized adjudication is more appropriate.  Therefore, the Court must balance concerns regarding

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | CV 10-7060-CAS (JCGx) | Date | January 17, 2013 |
|----------|------------------------|------|-------------------|
| Title | DANIEL ORDONEZ V. RADIO SHACK, INC. | | |

the litigation of issues common to the class as a whole with questions affecting individual class members.  In re Northern District of California, Dalkon Shield IUD Products Liability Litig., 693 F.2d 847, 856 (9th Cir. 1982).

In determining superiority, the court must consider the four factors of Rule 23(b)(3): (1) the interests that members in the class have in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigations concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely encountered in the management of a class action.  See Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1190–1193, (9th Cir. 2001) (opinion amended on denial of reh'g, 273 F.3d 1261).

## IV.   ANALYSIS

### A.   Rule 23(a) Prerequisites

#### 1.   Numerosity

Rule 23(a)(1) requires the class to be so numerous that joinder of individual class members is impracticable.  See Fed. R. Civ. P. 23(a)(1).  Here, the parties have identified more than 15,000 individuals who worked for RadioShack as sales associates during the proposed class period.  See .  This number of potential class members is sufficiently numerous to render individual joinder impracticable.[7]  See Fed. R. Civ. P. 23(a)(1); 1 Robert Newberg, NEWBERG ON CLASS ACTIONS, § 3:3 (4th ed. 2004) ("[D]ifficulty in joining as few as 40 class members should raise the presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone.").  Accordingly, the Court finds that the numerosity requirement is satisfied.

#### 2.   Commonality

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury . . . [and] [t]heir claims must depend upon a common contention

---

[7]RadioShack does not challenge this factor.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | CV 10-7060-CAS (JCGx) | Date | January 17, 2013 |
|---|---|---|---|
| Title | DANIEL ORDONEZ V. RADIO SHACK, INC. | | |

. . . of such nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." <u>Dukes</u>, 131 S. Ct. at 2551 (internal quotation marks and citations omitted). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." <u>Id.</u>

Whether each of putative subclass's claims satisfy the commonality requirement is discussed in turn.

### (a)    Rest Break Subclass

The Court previously found that under <u>Brinker,</u> a common question existed as to whether RadioShack's uniform rest break policy deprived employees of an opportunity to take all of the statutorily required breaks under California law.  <u>See Uddin v. RadioShack</u>, No. CV 11-0398-CAS, Dkt. No. 96 at 12 ("<u>Uddin</u> Order") (finding that "plaintiff's theory of liability—that RadioShack has a 'uniform policy, and that that policy, measured against wage order requirements, allegedly violates the law—is by its nature a common question eminently suited for class treatment.'" (quoting <u>Brinker</u>, 53 Cal.4th at 1033).  The exact same policy is challenged in this case, and in light of the Court's prior order, RadioShack does not argue that commonality is lacking as to this subclass.[8]  Accordingly, as to the rest break subclass, the commonality requirement is satisfied.

### (b)    Meal Break Subclass

<u>Brinker</u> also established the governing law for plaintiff's meal break claim.  The California Supreme Court concluded that California Labor Code § 512 "requires a first meal period no later than the end of an employee's fifth hour of work, and a second meal period no later than the end of an employee's 10th hour of work." <u>Brinker</u>, 53 Cal.4th at 1041.  The court further concluded that an employer need not ensure an employee does no work during off-duty meal period; an employer's obligation is only to "provide a meal period to its employees" by offering them a "reasonable opportunity to take an

---

[8] The reasons for this finding are also discussed in greater detail with respect to the predominance requirement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**            'O'

| Case No. | CV 10-7060-CAS (JCGx) | Date | January 17, 2013 |
|---|---|---|---|
| Title | DANIEL ORDONEZ V. RADIO SHACK, INC. | | |

uninterrupted 30-minute break, and does not impede or discourage them from doing so." Id. at 1040. In addition, an employer must not "undermine a formal policy of providing meal breaks" by "creating incentives to forego or otherwise encouraging the skipping of legally protected breaks." Id.

Plaintiff articulates the predicate for his theory with respect to the meal break claim as follows: (1) Radioshack maintains accurate time records; (2) sales associates had to obtain permission to take a meal break; and (3) RadioShack policy forbids associates from waiving meal breaks. Therefore, plaintiff contends meal break violations can be "easily identified" from RadioShack's time records, without individualized inquiries, because any missing meal break in the records leads inexorably to the conclusion that RadioShack failed to provide a meal break. Reply at 17. The existence of these "common policies," taken together, is what drives this litigation to a common answer.[9]

The Court disagrees—there is insufficient commonality to warrant certification of plaintiff's proposed meal break subclass. Unlike with plaintiff's rest break subclass, there is no argument that RadioShack's written policy does not comply with California law. Plaintiff's theory, therefore, is dependent on two pieces of circumstantial evidence. First, the existence of de facto "uniform" policies that deprive putative class members of the ability to take the statutorily prescribed meal breaks; and second, statistical evidence that demonstrates that over half of all putative class members "experienced significant meal break *violations* throughout the class period." Reply at 3 (emphasis added). As to the statistical evidence, plaintiff's expert repeatedly mischaracterizes any late, short, or missed meal periods as "violations"—in fact, there is no way of determining on a classwide basis whether these were violations, a legal conclusion, or whether individual class members voluntarily opted to start their meal break late, cut it short, or not take a

---

[9] To the extent that plaintiff relies on a "presumption" that arises from the empirical evidence that many class members had short, late, or missed meal periods, the Court finds that defendant has rebutted this presumption here. See Brinker, 53 Cal. 4th at 1053 ("If an employer's records show no meal period for a given shift over five hours, a rebuttable presumption arises that the employee was not relieved of duty and no meal period was provided.") (Werdegar, J., concurring). As noted, plaintiff has failed to identify any common policy that uniformly deprived employees of the opportunity to take meal breaks, such that individualized inquiries could be avoided.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL    'O'

| Case No. | CV 10-7060-CAS (JCGx) | Date | January 17, 2013 |
|---|---|---|---|
| Title | DANIEL ORDONEZ V. RADIO SHACK, INC. | | |

break at all. See, e.g., Steward Decl. ¶¶ 11, 22. Only through the use of sampling of putative class members could a classwide violation rate potentially be determined. Reply Decl. of Dr. Steward ¶¶ 42–51. But even then, in the absence of a uniform corporate policy, there is no common issue capable of resolution on a classwide basis.

And in light of the evidence presented thus far, the Court finds that plaintiff has not carried his burden of demonstrating that a uniform corporate policy denying employees the opportunity to take meal breaks could be proven on a classwide basis. Plaintiff's evidence of such a policy (or policies), taken as a whole, is simply insufficient to warrant class certification here. First, plaintiff has failed to demonstrate any uniform policy of requiring associates to ask "permission" before taking their meal breaks. Although plaintiff's declarants testify to being deprived meal breaks, plaintiff's reliance on the deposition testimony of Shad Agel is misplaced. As this single RadioShack manager testified, employees need not "obtain permission" to take a meal break—"[t]hey need to let whoever else is working know that they are going to take their meal break." Agel Depo. 207:17–19; see also Def.'s COD Exs. 1 ¶¶ 12, 17; 2 ¶¶ 12, 20; 10 ¶¶ 13, 18. In addition, defendant notes that Ordonez himself testified to taking thirty-minute meal breaks, where he sometimes went home, or went elsewhere to pick up food, and that he saw others in his stores taking these breaks as well. Def.'s COE Ex. 32, Ordonez Depo. 231:5–8, 307:7–1, 97:15–98–10, 235:10–20, 148:23–149:5. That the evidence shows that some employees may have been deprived of the opportunity to take an uninterrupted meal break, directly or indirectly, does not amount to a "policy and practice" capable of determining RadioShack's liability on a classwide basis. See Gonzales v. OfficeMax North Am., 07-cv-0452, Dkt. No. 80 at 10 (C.D. Cal. Nov. 5, 2012) (noting that "the evidence proffered by the Employees may well demonstrate that OfficeMax violated its statutory obligation. . . in some instances. . . [but] [t]he only question before the Court today is whether these theories of recovery. . . can be adjudicated on a classwide basis.").

Rather than demonstrating the existence of a uniform policy of depriving employee of their meal breaks, the evidence before the Court presents numerous possibilities as to *why* certain employees may have had a late, short, or missed meal break during a given shift. As such, the Court finds that it cannot conclude that any short, late, or missed meal break that plaintiff's expert identified corresponds to a legal violation on a classwide basis. In similar factual circumstances, courts—including this one—have rejected plaintiff's argument that a common question capable of resolution through a common answer is available when a defendant's policy is facially legal. See,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'

| Case No. | CV 10-7060-CAS (JCGx) | Date | January 17, 2013 |
|---|---|---|---|
| Title | DANIEL ORDONEZ V. RADIO SHACK, INC. | | |

e.g., Brinker, 53 Cal.4th at 1051 ("Unlike for the rest period claim and subclass, for this claim neither a common policy nor a common method of proof is apparent."); Brown v. Fed. Express Corp., 249 F.R.D. 580, 585-596 (C.D. Cal. 2008) (no common issue without a common corporate policy); Kenny v. Supercuts, Inc., 252 F.R.D. 641, 646 (N.D. Cal. 2008) (no common question where the plaintiff has "failed to identify any theory of liability that presents a common question).[10]

Because RadioShack's meal policy is not alleged to be facially unlawful in contrast to the rest break policy, the Court finds that the proposed meal break subclass's claims do not "depend upon a common contention . . . of such nature that it is capable of classwide resolution." Dukes, 131 S. Ct. at 2551. Accordingly, class certification is denied as to this claim.

**(c)     Off-the-Clock Subclass**

Plaintiff also argues that certification of an off-the-clock subclass is appropriate. Again, plaintiff focuses on statistical and circumstantial evidence demonstrating that RadioShack had a common policy of failing to compensate employees for all of the hours that they worked. Plaintiff points to RadioShack's written policy stating that sales associates should not work overtime if at all possible, see Sha Decl. Ex. 7, in addition to testimony from Ordonez and others that sales associates made off-the-clock bank deposits and interstore merchandise transfers, see Sha Reply Decl. Ex. 3, Depo. of Darius Kurbiel 88:2–19; Ordonez Depo. 113:25–115:21. In addition, in light of these

---

[10]  Because the Court finds that plaintiff has not demonstrated a classwide method of demonstrating defendant's liability based on a common unlawful employment policy, plaintiff also will be unable to demonstrate a common issue regarding the provision of "premium pay" for employees who were not provided a rest or meal break. See Brinker, 53 Cal.4th at 1040 n.19 (explaining that an employer who "knew or reasonably should have known" that an employee skipped a 30-minute meal break owes one hour of "premium" pay). Without a common policy at issue that caused putative class members to be deprived of the opportunity to take uninterrupted meal breaks, plaintiff is unable to offer a classwide method of proving when premium pay should have been paid. Therefore, the Court declines to reconsider its prior decision in Uddin that failure to pay premium wage is not a labor law violation. See Avilez v. Pinkerton Gov't Svcs., No. 11-cv-0493, Dkt. No. 75 (C.D. Cal. Oct. 9, 2012) (finding to the contrary).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'

| Case No. | CV 10-7060-CAS (JCGx) | Date | January 17, 2013 |
|---|---|---|---|
| Title | DANIEL ORDONEZ V. RADIO SHACK, INC. | | |

purported polices, plaintiff notes that Dr. Steward found that the number of overtime hours worked by sales associates only comprised 4% of total hours worked by sales associates.  Steward Decl. ¶ 28.  Plaintiff argues that RadioShack's policy of limiting overtime hours, coupled with anecdotal evidence of off-the-clock work, is sufficient evidence of a "common policy and practice" to certify a class.  Reply at 14.

The Court finds that as with the meal break subclass, the off-the-clock subclass's claims do not "depend upon a common contention . . . of such nature that it is capable of classwide resolution."  Dukes, 131 S. Ct. at 2551.  Class certification is therefore inappropriate.  Plaintiff offers insufficient evidence that any alleged off-the-clock work was due to a standardized employment practice, rather than a product of the vagaries of the store an employee worked in, the time of year, or the manager who was in charge.  As with the meal break subclass, plaintiff's claims are inherently premised upon the "disparate employment settings" among its putative members.  See Smith v. T-Mobile USA, Inc., 2007 WL , at *7–8 (C.D. Cal. Aug. 15, 2007) (concluding that "disparate employment settings" among the class members rendered claims atypical and not subject to common proof or defenses).  Without evidence of a uniform policy, there is no common issue required for certification of an off-the-clock class.  See, e.g., Cortez v. BestBuy Stores, LP, No. CV 11-5053, 2012 WL 255345 at *9 (C.D. Cal. Jan. 25, 2012) (denying certification where there was no evidence of a common policy of off-the-clock work); Beauperthuy v. 24 Hour Fitness USA, Inc., 772 F. Supp. 2d 1111, 1124 (N.D. Cal. 2011) ("One of Plaintiffs' central allegations is that trainers were not paid for all of the FIT hours they worked because each club was given a quota of FIT hours it could not exceed . . . . Plaintiffs maintain that the policy of allocating a certain number of FIT hours to each club created incentives for club-level managers to make trainers work off the clock. [Citations.]  Such allegations are insufficient to constitute evidence of a common decision, policy, or plan, especially in light of 24 Hour's formal written policies to the contrary.").

Further, defendant has established that it maintains a lawful policy prohibiting off-the-clock work and that it has paid more than 57,000 hours of over time during the proposed class period.  See Declaration of Cathy Simpson, ¶¶ 5–8.  Thus, "the individualized assessment necessary to ascertain whether there were in fact any employees who were told to work 'off-the-clock' would not be susceptible to common proof."  Washington v. Joe's Crab Shack, 271 F.R.D. 629, 642 (N.D. Cal. 2010).  Accordingly, the Court denies plaintiff's motion to certify an off-the-clock subclass.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | CV 10-7060-CAS (JCGx) | Date | January 17, 2013 |
|---|---|---|---|
| Title | DANIEL ORDONEZ V. RADIO SHACK, INC. | | |

### 3.    Typicality

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Wolin v. Jaguar Land Rover North Am., LLC, 617 F.3d 1168, 1175 (9th Cir. 2010). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" Ellis v. Costco Wholesale Corp., 657 F.3d 970, 984 (9th Cir. 2011) (quoting Hanlon, 976 F.3d at 508)). Thus, typicality is satisfied if the plaintiffs' claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020.

Here, there is no real dispute that plaintiff's claims are "reasonably co-extensive" with the putative members of the Rest Break Subclass. Specifically, plaintiff's claim that defendant's rest break policy violates California labor laws is identical to the Rest Break Subclass's claims, and there is little doubt that plaintiff's interest "aligns with the interests of the class." Wolin, 617 F.3d at 1175. Accordingly, the Court concludes that the typicality factor is satisfied.

### 4.    Adequacy

To establish adequacy of representation, the issue is whether "the named plaintiffs and their counsel have any conflicts of interest with other class members" and whether "the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class." Hanlon, 150 F.3d at 1020.

The Court concludes that the adequacy requirement has been satisfied. There is no dispute that the interest of plaintiff and the Putative Class Members align. Moreover, all indications are that plaintiff's counsel have pursued this action vigorously on behalf of the putative class and will continue to do so. See Decl. of Farzad Rastegar ¶¶ 3–4, 13. Accordingly, the adequacy requirement has been met.[11]

---

[11] Defendant does not contest this factor nor typicality.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**    'O'

| Case No. | CV 10-7060-CAS (JCGx) | Date | January 17, 2013 |
|---|---|---|---|
| Title | DANIEL ORDONEZ V. RADIO SHACK, INC. | | |

## B.    Rule 23(b) Requirements

Because the Court finds that the Rule 23(a) requirements have been satisfied as to plaintiff's proposed rest break subclass, the Court turns to the Rule 23(b) requirements. Dukes, 131 S. Ct. at 2548.  Under Rule 23(b)(3), class certification is appropriate "if Rule 23(a) is satisfied" and if "the court finds that [1] the questions of law or fact common to class members predominate over any questions affecting only individual members, and that [2] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1162–63 (9th Cir. 2001).

The predominance inquiry "trains on legal or factual questions that qualify each class member's case as a genuine controversy."  Amchem Prods, Inc. v. Windsor, 521 U.S. 591, 625 (1997); see also Poulos v. Caesars World, Inc., 379 F.3d 654, 664 (9th Cir. 2004).  "When one or more of the central issues in the action are common to the class and can be said to predominate," a class action will be considered proper "even though other matters will have to be tried separately."  Gartin v. S&M NuTec LLC, 245 F.R.D. 429, 435 (C.D. Cal. 2007).  "Because no precise test can determine whether common issues predominate, the Court must pragmatically assess the entire action and the issues involved."  Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474, 489 (E.D. Cal. 2006).   "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy."  See Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).  Moreover, "[c]onsidering whether 'questions of law or fact common to class members predominate' begins. . . with the elements of the underlying cause of action."  Erica P. John Fund, Inc., v. Halliburton Co., —— U.S. ——, ——, 131 S. Ct. 2179, 2184 (2011).

### 1.    Predominance

Plaintiff argues that this Court previously found RadioShack's written rest break policy to be illegal under Brinker Restaurant Corp. v. Sup. Ct., 53 Cal.4th 1004 (2012), and that this finding need not be revisited here.  Reply at 7 (citing Uddin v. RadioShack, No. CV 11-0398-CAS, Dkt. No. 96 ("Uddin Order")).

In Brinker, the California Supreme Court held that the defendant's rest break policy was unlawful because it provided for only one 10 minute rest break for each full

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL   'O'

| Case No. | CV 10-7060-CAS (JCGx) | Date | January 17, 2013 |
|---|---|---|---|
| Title | DANIEL ORDONEZ V. RADIO SHACK, INC. | | |

four hours worked, but did not allow for a rest break that was a "major fraction thereof." Brinker, 53 Cal.4th at 1028. The Court interpreted IWC Wage Order No. 5, subdivision 12(A), as meaning that "[e]mployees are entitled to 10 minutes rest for shifts from three and one-half to six hours in length, 20 minutes for shifts of more than six hours up to 10 hours," 30 minutes for shifts of more than 10 hours up to 14 hours, and so on. Id. at 1029. Because the written policy at issue stated that "[i]f I work over 3.5 hours during my shift, I understand that I am eligible for one ten minute rest break for each four hours that I work," it was not an abuse of discretion to certify a class because "[c]lasswide liability could be established through common proof if [plaintiff] were able to demonstrate that, for example, Brinker under this uniform policy refused to authorize and permit a second rest break for employees working shifts longer than six, but shorter than eight, hours." Id. at 1033.

At oral argument, the Court issued a tentative order finding that plaintiff's proposed class satisfied the predominance requirement. However, after considering the parties' arguments at the hearing, the Court concludes that plaintiff has not demonstrated that the predominance requirement is met. As the Court found previously, RadioShack's written rest break is nearly identical to the one found impermissible in Brinker. See Uddin Order at 20. RadioShack's written rest break policy does not authorize a second break to those associates who work shifts over six hours, but less than eight hours, or at least twenty minutes of total rest break time. Instead, the policy only provides for one break every four hours, albeit a break of fifteen minutes, see Sha Decl. Ex. 7, which is likely insufficient under IWC Wage Order No. 5, subdivision 12(A), whereby an employer must provide "ten (10) minutes net rest time per four (4) hours *or* major fraction thereof". RadioShack's policy lacks the "major fraction" thereof language contained in the wage order. To be compliant with California law, RadioShack would need to provide associates with the opportunity for an additional five minutes (for a net of twenty) of rest break time for every shift that they worked greater than six hours in duration. See Brinker, 53 Cal. 4th at 1029 (must provide "20 minutes for shifts lasting more than six hours up to 10 hours"). However, as counsel for defendant noted at oral argument, RadioShack's policy also states that "[s]tate laws specifying additional break and meal provisions may also apply."

Therefore, if RadioShack uniformly enforced the policy discussed above—without modification for any state laws providing for additional rest breaks—plaintiff is correct that the uniformity of the rest break subclass would not depend on issues of waiver, or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL          'O'

| Case No. | CV 10-7060-CAS (JCGx) | Date | January 17, 2013 |
|---|---|---|---|
| Title | DANIEL ORDONEZ V. RADIO SHACK, INC. | | |

whether individual employees decided to take a rest break that they were entitled to.  See Reply at 20.  As Brinker held:

> An employer is required to authorize and permit the amount of rest break time called for under the wage order for its industry.  If it does not—if, for example, it adopts a uniform policy authorizing and permitting only one rest break for employees working a seven-hour shift when two are required—it has violated the wage order and is liable.  No issue of waiver ever arises for a rest break that was required by law but never authorized; if a break is not authorized, an employee has no opportunity to decline to take it.

53 Cal.4th at 1033.  Like the defendant in Brinker, RadioShack's rest break policy appears to be facially inconsistent with California law, as it does not "authorize and permit" the proper amount of rest breaks.[12]

The totality of the evidence demonstrates that adjudication of the putative class members' claims will involve predominantly individual issues, such that Rule 23(b)(3) is unmet.  Defendant offers testimony that despite its written policy, putative class members were granted rest breaks in accordance with California law—or at a minimum, in accordance with no uniform policy at all.  Compare Def.'s COD Aguirre Decl. ¶ 15 (one 15-minute break for approximately every three hours of work); Bell Decl. ¶ 23 (same); Hart Decl ¶ 23 (same); Indeck Decl. ¶¶ 25–26 (same); Lorge Decl. ¶ 17 (same); with Cotrell Decl. ¶ 15 (10 minute rest breaks, provided after three and six hours for an employee working a six hour shift); and M. Rodriguez Decl. ¶ 24 (15-minute breaks every three and one-half hours) and S. Hernandez Decl. ¶ 16 (two 15-minute breaks per eight-hour shift); Mohamed Decl. ¶ 20 (same); Najera Decl. ¶ 15 (same); Ocha Decl. ¶ 17; Torres Decl. ¶ 13 (same).  See also Agel Depo. 212:23–213:5 ("one 15-minute break for every four hours worked").  Putative class members offering testimony on plaintiff's

---

[12] The Court notes that two of the California appellate decisions it cited to its tentative order have since been de-published.  See In re Lamps Plus Overtime Cases, 209 Cal. App. 4th 35, 41–42 (2012), review denied and ordered not to be officially published (Dec 12, 2012); Hernandez v. Chipotle Mexican Grill, Inc., 208 Cal. App. 4th 1487, 1491 (2012), review denied and ordered not to be officially published (Dec. 12, 2012).  See Pl.'s Notice of New Legal Authority at 4, Dkt. No. 95.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**       'O'

| Case No. | CV 10-7060-CAS (JCGx) | Date | January 17, 2013 |
|---|---|---|---|
| Title | DANIEL ORDONEZ V. RADIO SHACK, INC. | | |

behalf describe not being able to take a rest break at all, being interrupted during their rest break or having to ask permission to take one, or not receiving a second rest break for shifts greater than six hours in length. See, e.g. Pl.'s Compend. Garcia Decl. ¶ 17; Santiago Decl. ¶ 18; Macaulay Decl. ¶ 17–22. Plaintiff also notes the testimony of defendant's Rule 30(b)(6) witness, who testified that defendant's policy was actually executed as written, see Agel Depo. 212:23–213:5.

In light of this competing testimony, whether putative class members were actually provided or deprived of the rest breaks owed to them requires individualized inquiries. There is evidence in the record that putative class members were granted the opportunity to take rest breaks in accordance with California law. See Gonzalez v. Millard Mall Servs., Inc., --- F.R.D. ---, 2012 WL 684590, at *8 (S.D. Cal. March 2, 2012) ("The conflicting evidence reveals that Millard did not have a uniform practice of denying employees their meal breaks and/or rest breaks."). Because of the competing testimony before the Court, plaintiff's evidence that defendant *may* have an illegal, written rest break policy is insufficient for this Court to find that common issues predominate. Unlike other cases where a defendant had a purportedly illegal rest or meal break policy and courts found that common issues predominated, there is substantial evidence in this case that defendant's actual practice was to provide rest breaks in accordance with California law, as discussed previously. See Avilez v. Pinkerton Gov't Svcs., No. 11-cv-0493, Dkt. No. 75 (C.D. Cal. Oct. 9, 2012) (finding predominance met where common proof of a common purportedly illegal policy is available to establish plaintiff's prima facie case and evidence demonstrated that policy was enforced solely as written); Schulz v. Qualxserv, LLC, No. 09-cv-0017, 2012 U.S. Dist. LEXIS 58561, *23–24 (S.D. Cal. Apr. 26, 2012) (a "common corporate policy" that is allegedly illegal is sufficient to find predominance); Jimenez v. Allstate Ins. Co., No. 10-cv-8486, 2012 WL 1366052, at *15 (C.D. Cal. Apr. 18, 2012) ("in the absence of a common practice or policy or some other 'glue' to bind this class, commonality cannot be shown").

Moreover, although plaintiff is correct that "[n]o issue of waiver ever arises for a rest break that was required by law but never authorized," Brinker, 53 Cal.4th at 1033, plaintiff has not demonstrated how, on a classwide basis, he can demonstrate that defendant failed to authorize the minimum amount of rest periods required by California law. Unlike a meal break class, rest breaks were not recorded in defendant's timekeeping system, and defendant was not required to record them under California law. As such, based on the evidence in the record, plaintiff appears unable to offer any

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL    'O'

| Case No. | CV 10-7060-CAS (JCGx) | Date | January 17, 2013 |
|---|---|---|---|
| Title | DANIEL ORDONEZ V. RADIO SHACK, INC. | | |

classwide method for proving when class members were or were not authorized and permitted to take a rest break. Without such a classwide method for demonstrating which class members, during which shift, were not authorized and permitted to take rest breaks in accordance with California law, individualized issues will likely predominate over classwide ones at trial. See Tien v. Tenet Healthcare Corp., 209 Cal. App. 4th 1077, 1088 (2012) ("because employees did not record their 10-minute rest breaks. . . the reasons, if any, that employees might not take their breaks were predominantly individualized questions of fact not susceptible to class treatment); Gonzalez v. OfficeMax North Am., No. 07-cv-0452 at 5–6 (C.D. Cal. Nov. 5, 2012) (finding that despite "punch-card" evidence demonstrating that rest breaks were allegedly missed on a majority of shifts, predominance requirement was unmet where plaintiff offered no evidence that a uniform rest break policy was implemented).[13]

---

[13] Plaintiff's Notice of New Legal Authority, citing to Bradley v. Networkers Int'l, 211 Cal. App. 4th 1129, 150 Cal. Rptr. 3d 268 (Dec. 12, 2012), does not advance plaintiff's cause here. The Bradley court found that the defendant "did not present any evidence showing it had a formal or informal practice or policy of permitting the required breaks or that any worker believed he or she was entitled to take a legally-required rest or meal break, or that some or all workers took these breaks." Id. at 284. In addition, the court noted that defendant "did not present any evidence that its meal or break policies (or the failure to institute such policies) were different with respect to each worker." Id.; see also id. at 285 ("Networkers did not present any declarations or deposition testimony suggesting that the required breaks were regularly taken by the workers."). In light of these failures, it is not surprising that the court concluded that "[t]he lack of a meal/rest break policy and the uniform failure to authorize such breaks are matters of common proof." Id. at 284–85. Unlike Bradley, plaintiff here has not demonstrated how he could prove his rest break claim on a classwide basis, because defendant has offered substantial evidence that its rest and meal break policies complied with California law. In fact, Bradley distinguished cases such as Tien, 209 Cal. App. 4th 1087, 1090, where 'the evidence of the employer's liability to each employee depended on numerous individual issues regarding the employee's particular situation." Bradley, 150 Cal. Rptr. at 288.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | CV 10-7060-CAS (JCGx) | Date | January 17, 2013 |
|---|---|---|---|
| Title | DANIEL ORDONEZ V. RADIO SHACK, INC. | | |

Accordingly, because individual issues predominate in considering plaintiff's rest break claims, certification is inappropriate.[14]  In light of this conclusion, the Court need not reach the second prong of Rule 23(b)(3).

## V.    CONCLUSION

In accordance with the foregoing, the Court DENIES plaintiff's motion for class certification without prejudice.

IT IS SO ORDERED.

                                                            00:00
                                                            CMJ

_____

[14]Plaintiff's wage statement and UCL claims are predicated on his meal break, rest break, and unpaid wages claims.  Because the Court determines that the underlying claims are not suitable for class certification, plaintiff's other claims meet the same fate.